IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DONALD W. RAGER,
      Plaintiff,

vs.                              Case No.: 5:15cv35/MW/EMT

WARDEN PAIGE AUGUSTINE, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Donald W. Rager ("Rager"), an inmate of the federal Bureau of Prisons ("BOP") proceeding pro se and in forma pauperis, sues the BOP and several of its employees under 28 U.S.C. § 1331 and Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Pending before the court are Defendants' motions to dismiss Rager's Amended Complaint, and Rager's responses in opposition (ECF Nos. 49, 63, 64, 67, 72, 88, 92, 94).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. See N. D. Fla. Loc. R. 72.2(C); see also 28 U.S.C. § 636(b)(1)(B), (C); and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that Rager's claims are subject to dismissal on statute-of-

limitations grounds or for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.   ALLEGATIONS OF THE AMENDED COMPLAINT

Rager was housed in the Federal Correctional Institution in Marianna, Florida ("FCI-Marianna") at the time of the events giving rise to this action[1] (*see* ECF No. 15 at 10).[2]  Rager names ten individual Defendants in his First Amended Complaint:  (1) Paige Augustine, the former Warden of FCI-Marianna; (2) Keith Buford, a Lieutenant at FCI-Marianna; (3) S. Malone, a Lieutenant at FCI-Marianna; (4) Eddie Snell, a Case Manager at FCI-Marianna; (5) Connie Copeland, a Counselor at FCI-Marianna; (6) R. Honeycutt,[3] a Lieutenant at FCI-Marianna; (7) K. O'Bryan, an Officer at FCI-Marianna; (8) T. Lewis, a Captain at FCI-Marianna; (9) Craig Simmons, the Southeast Regional Administrative Remedy Coordinator for the BOP[4]; and (10) Harrell Watts, National Administrative Remedy Coordinator for the BOP (ECF No. 15 at 1–4). Rager also names the BOP as a Defendant (*id.* at 1, 4).

---

[1] Rager was housed at FCI-Elkton, in Lisbon, Ohio, when he commenced this lawsuit, and he is still housed there (*see* ECF No. 1 at 2).

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system.

[3] Rager misspelled this Defendant's name as Hunnicutt.

[4] Rager did not identify Defendant Simmons by name, but Defendants did so in one of their motions to dismiss (ECF No. 64 at 2).

Rager alleges that on July 13, 2010, he reported to Lieutenant Buford's office to discuss a complaint Rager had made concerning an officer's confiscating his "honey buns" on July 10, 2010 (ECF No. 15 at 11; ECF No. 94 at 2). Rager alleges Lieutenant Buford became hostile and verbally abusive, cursing and saying that he had more important matters to deal with than Rager's honey buns (*id.*). Rager alleges Buford then ordered him to leave the office, and as he was exiting the office onto the sidewalk, Buford followed him (*id.*). Rager alleges Buford continued his "verbal abuse," including threats of physical harm, but Rager did not respond (*id.*). Rager alleges Buford then punched him in the back, knocking him to the ground (*id.*). Rager alleges Buford escorted him to the Special Housing Unit ("SHU"), and continued to shout, curse, and threaten him (*id.*). He alleges Buford also poked, pushed, and prodded him during the escort (*id.*). Rager alleges he did not respond to Buford's verbal or physical attempts to provoke him, and Buford again punched him in the back (*id.*). He alleges he was knocked forward into a brick wall, causing extreme pain in his back, as well as pain, bruising, swelling, and an abrasion to his forehead (*id.*). Rager alleges the two of them proceeded to the SHU sally port, where Buford ordered him against the wall and roughly conducted a pat-down search (*id.*). Rager alleges Buford continued to verbally attempt to provoke him to react (*id.*). Rager alleges he

told Buford that he had a broken wrist and pointed to his right wrist, which was in a soft cast (*id.*).  He alleges Buford forcefully grabbed, twisted, and pulled his right wrist and hand for several moments, causing him extreme pain, while stating, "How does that feel Fucker?" (*id.*).  Rager alleges Buford then pushed him against the wall and forcefully handcuffed him, clamping the handcuffs more tightly than necessary and causing pain, bruising, and swelling to both wrists, as well as further injury to his right wrist (*id.* at 12).

Rager alleges Lieutenant Buford escorted him into the SHU, and told Officer O'Bryan that Rager was going to receive a disciplinary report for insolence (ECF No. 15 at 12).  Rager alleges O'Bryan and Buford left him handcuffed for approximately ten (10) minutes and refused to obtain medical treatment for him, despite his obvious injuries and continuous complaints of pain and requests for medical treatment (*id.*). Rager alleges Officer O'Bryan then removed and confiscated the soft cast and back brace (which Rager was wearing for broken vertebrae allegedly resulting from an unrelated, previous assault) (*id.*).  Rager alleges he was deprived of the back brace for ten (10) days and the soft wrist cast for twenty-two (22) days (*id.*).  Rager alleges he repeatedly requested medical attention for injuries to his back and wrists, and abrasions to his forehead and lip, but no treatment was provided (*id.*).

Rager alleges Lieutenant Buford placed him in administrative detention in SHU pending an investigation of a violation of BOP rules (ECF No. 15 at 12).  Rager alleges Buford also filed a disciplinary report alleging that he refused to follow an order (*id.*).  Rager alleges Buford's allegation that he refused to follow an order was false and intended to extend Rager's placement in SHU, thwart his efforts to report Buford's use of force, and cover up the use of force (*id.*).  Rager alleges Buford was aware that he (Rager) had reported to the Office of Inspector General that members of the correctional staff at FCI-Marianna were bringing contraband into the institution and committing other illegal acts (*id.* at 13).  Rager alleges Lieutenant Buford was subsequently terminated for bringing controlled substances into the institution (*id.*).

Rager alleges that during his stay in the SHU, he filed a complaint concerning Buford's use of force with Officer O'Bryan, Lieutenant Honeycutt, Lieutenant Malone, Captain Lewis, and Warden Augustine (ECF No. 15 at 13).  Rager alleges on July 20, 2010, Lieutenant Romine and Officer Sapp (neither of whom is a named Defendant) investigated his complaint of excessive force by Buford, including viewing a video recording showing Buford striking Rager in the back and twisting his injured wrist (*id.*).  Rager alleges Buford was found to have violated BOP policy and was disciplined for using excessive force (*id.*).

Rager alleges Warden Augustine approved his continued placement in SHU for various reasons, including protective custody (for Rager's safety), pending investigation, and administrative detention (ECF No. 15 at 13).  Rager alleges he was detained in the SHU for a total of 127 days (from July 13, 2010 to November 17, 2010) (*id.* at 15).  He alleges during that time, Counselor Copeland, acting on her own behalf or allegedly on behalf of Warden Augustine, came to his cell several times and told him that if he persisted in his administrative complaint and grievances against Buford and others, he would remain in the SHU and then be transferred to "a much worse place" (*id.* at 14).  Rager alleges on August 8, 2010, Case Manager Snell, acting on his own behalf or allegedly on behalf of Warden Augustine, told him that he was still in the SHU because of his administrative complaints, and that he would be transferred to another institution (*id.*).  Rager alleges on October 24, 2010, he inquired of Captain Lewis as to when he would be released from the SHU (*id.* at 17).  Rager alleges Lewis responded that Rager was going to be transferred to another institution, which could take several weeks (*id.*).  Rager alleges Captain Lewis told him that if he wished to stay at FCI-Marianna, he could write a letter to Warden Augustine stating his desire to remain there and that he would withdraw all of the administrative complaints and grievances he had filed (*id.*).  Rager alleges he told Captain Lewis to

inform the Warden that he would like to stay at Marianna and "would do as Capt. Lewis had asked" (*id.*).  Rager alleges on October 26, 2010, Case Manager Snell told him that Warden Augustine sent him to tell Rager that he could avoid being transferred if he notified the Warden that he wished to stay at FCI-Marianna and would withdraw his administrative complaints and grievances (*id.* at 14).

Rager alleges on November 2, 2010, he told Warden Augustine that he wished to stay at FCI-Marianna and that he would withdraw all of the grievances he had filed (ECF No. 15 at 17).  He alleges the next day, after a staff meeting, Lieutenant Malone told him that the Warden instructed staff to "hold off" on Rager's transfer and to reevaluate whether Rager could remain at FCI-Marianna (*id.*).  Rager alleges on November 4, 2010, Case Manager Snell repeated this information (*id.*).  Rager alleges he was released from the SHU on November 17, 2010 (*id.*).  He alleges he was maintained in the SHU to "thwart" his ability to utilize the administrative grievances process and the judicial process and in retaliation for his filing administrative complaints and grievances (*id.* at 15).

Rager alleges that on March 22, 2011, four months after he was released from the SHU, Lieutenant Malone told him that Warden Augustine "sent" him to make one of Rager's administrative grievances "go away" (ECF No. 15 at 14–15).  Rager

alleges Malone told him several times that if he did not drop his grievances, things would "turn out bad" for him and he could be returned to the SHU (*id.*).

Rager alleges between July 19, 2010 and February 28, 2011, he filed a total of 7–10 administrative grievances regarding the use of force by Lieutenant Buford, the denial of medical care and other services (education, religious, recreation, and law library services) while he was in the SHU, and prison officials' failure to comply with regulations governing an inmate's placement in the SHU (for example, the regulation requiring that an inmate's continued placement be approved by the BOP's regional director or that prison officials identify special circumstances warranting his continued placement, and regulations requiring prison officials to conduct periodic reviews, evaluations, and interviews) (ECF No. 15 at 17). Rager alleges Defendant Simmons, the Southeast Regional Administrative Remedy Coordinator, repeatedly rejected, returned, or denied his administrative appeals for "fraudulent, fictitious, or factually incorrect reasons," including legibility, timeliness, and failure to attach the response from the institutional level (*id.* at 15). Rager alleges that Simmons also failed to respond to administrative appeals within the time limits set forth in BOP policy (*id.*). Rager alleges Defendant Watts, the National Administrative Remedy Coordinator, rejected, returned, or denied his administrative appeals for "fraudulent, fictitious, or

factually incorrect reasons" (*id.* at 16).  Rager alleges Watts also failed to respond to administrative appeals within the time limits set forth in BOP policy, and two of his appeals still have not been answered (*id.* at 16–17).

Rager alleges that as a result of the assault by Lieutenant Buford on July 13, 2010, and the denial of medical treatment—including denial of his back brace for 10 days and his soft wrist cast for 22 days—he suffered pain and suffering, including persistent pain and weakness in his right wrist and hand, and continued, persistent pain and weakness in his lower back, which requires the continued use of a back brace (ECF No. 15 at 16).

Rager seeks monetary relief against the individual Defendants under <u>Bivens</u>, for alleged violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights (ECF No. 15 at 18–21).  He also seeks declaratory relief and an injunction requiring the BOP to comply with its own regulations and policies regarding the administrative grievance process (*id.* at 21).  Rager additionally seeks imposition of a "civil penalty" upon the BOP (*id.*).

## II.    DEFENDANTS' MOTIONS TO DISMISS

Defendants Buford, O'Bryan, Honeycutt, Malone, Lewis, Copeland, and Snell contend Rager's claims against them are subject to dismissal of grounds of statute of

limitations, failure to state a claim upon which relief may be granted, and qualified immunity (ECF Nos. 64, 67, 72). Defendants Simmons and Watts contend this Court does not have personal jurisdiction over them, and that Rager's allegations fail to state a claim upon which relief may be granted (ECF No. 64). The BOP contends that a <u>Bivens</u> claim may not be brought against the agency (*see* ECF No. 49). The BOP further contends that to the extent Rager asserts a claim under the Federal Tort Claims Act ("FTCA"), only the United States is a proper Defendant. Additionally, Rager did not first file an administrative tort claim, which is a prerequisite to filing a lawsuit under the FTCA.[5]

Rager filed responses in opposition to Defendants' motions to dismiss (ECF Nos. 63, 88, 92, 94).

A.   <u>Statute of Limitations</u>

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." <u>Tello v. Dean Witter Reynolds, Inc.</u>, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005); <u>Hughes v. Lott</u>, 350 F.3d 1157, 1163 (11th Cir. 2003) (citing <u>Leal v. Ga. Dep't of Corr.</u>, 254 F.3d 1276, 1280 (11th Cir. 2001)).

---

[5] Former Warden Augustine has not been served with process despite the court's reasonable efforts to accomplish service (*see* ECF Nos. 34, 39, 50, 55, 58, 62).

Title 42 U.S.C. § 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). This is so for the length of the statute of limitations—it is that which the State provides for personal-injury torts. *Id.* Bivens suits have the same statute of limitations as suits brought under Section 1983. *See* Kelly v. Serna, 87 F.3d 1235, 1238 (11th Cir. 1996). In cases in which Florida is the forum state, as here, a § 1983 or Bivens plaintiff has four (4) years to file suit. *See* Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003).

It has long been the law of the Eleventh Circuit that in actions under § 1983 or Bivens, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." McNair v. Allen, 515 F. 3d 1168, 1173 (11th Cir. 2008) (internal quotation marks and citation omitted); Uboh v. Reno, 141 F.3d 1000, 1002 (11th Cir. 1998) (a Bivens action accrues at the time the plaintiff knew or had reason to know of his claims); *see also* Diaz v. United States, 165 F.3d 1337, 1339 (11th Cir. 1999) (a tort claim under the Federal Tort Claims Act generally accrues at the time of injury). The accrual date of a § 1983 or Bivens action is a

question of federal law that is not resolved by reference to state law. *See* Wallace, 549 U.S. at 388.  Accordingly, this action accrued at the time the facts which would support a cause of action were apparent to Rager, or should have been apparent to a person with a reasonably prudent regard for his rights; and Rager had four years from that date in which to commence this lawsuit.

Rager knew or had reason to know of each of the following alleged injuries, and the identities of the responsible parties, no later than the accrual dates identified for the respective claims:

(1) Rager's Fourth, Fifth, and Fourteenth Amendment claims concerning Lieutenant Buford's use of force on July 13, 2010, and Buford's failure to follow the BOP's use of force policies (asserted in paragraphs 5–10 and 27 of the First Amended Complaint), which accrued on July 13, 2010;

(2) Rager's related First, Eighth, and Fourteenth Amendment claims concerning Lieutenant Buford's use of force on July 13, 2010, in retaliation for Rager's reporting improper and illegal conduct by staff members at FCI-Marianna (asserted in paragraphs 12 and 31 of the First Amended Complaint), which accrued on July 13, 2010;

(3) Rager's Fourth, Fifth, and Fourteenth Amendment claims concerning Lieutenant Buford and Officer O'Bryan's denial of medical treatment for injuries Rager allegedly suffered as a result of Buford's use of force (asserted in paragraphs 9, 10, and 28 of the First Amended Complaint), which accrued no later than July 17, 2010, when Rager began receiving medical treatment, according to medical records he submitted (*see* ECF No. 88-1 at 53–54);

(4) Rager's Fourth, Fifth, Eighth, and Fourteenth Amendment claims concerning Lieutenant Buford's writing a false disciplinary report on July 17, 2010 (asserted in paragraphs 11 and 29 of the First Amended Complaint), which accrued on July 25, 2010, the date Rager received notice of the disciplinary report, according to the copy of the report submitted by Rager (*see* ECF No. 88-1 at 78); and

(5) Rager's First, Fourth, Fifth, Eighth, and Fourteenth Amendment claims concerning Defendants Copeland, Buford, Snell, Malone, Lewis, and Augustine's maintaining Rager in the SHU, changing his detention status from protective custody to "under investigation" to administrative detention, and threatening to transfer him to another institution unless he dropped his administrative complaints and grievances (asserted in paragraphs 10–19, 24, 25, 30, 32, and 35 of the First Amended Complaint), which accrued at the latest on November 17, 2010, the day Rager was released from the SHU to the general population.

The undersigned rejects any suggestion by Rager that his civil rights lawsuit did not accrue until he exhausted his administrative remedies. The injury resulting from each prison official's allegedly unconstitutional conduct was complete on the respective dates referenced *supra* (e.g., the date Lieutenant Buford used retaliatory, excessive force; the last date Lieutenant Buford and Officer O'Bryan denied medical treatment; the date Lieutenant Buford wrote a false disciplinary report; and the last date Defendants kept him in the SHU), not on the date Rager learned that the allegedly unconstitutional conduct would not be remedied through the administrative grievance process. *See, e.g.*, Davies v. Former Acting Dist. Dir.-Orlando, U.S. Citizenship and Immigration Servs., 484 F. App'x 385, 388 & n.2 (11th Cir. 2012) (unpublished)

(holding that due process challenge to defendant official's denial of immigration applications accrued on date of decision denying applications, and rejecting plaintiffs' argument that constitutional claim did not accrue until they had exhausted their administrative remedies); Adams v. Wiley, 398 F. App'x 372, 374 (10th Cir. 2010) (the fact that prison officials' allegedly unconstitutional decision could later have been reversed through the grievance process did not extend the accrual date of these claims for purposes of Bivens suit) (unpublished). *But see* Brown v. Morgan, 23 F. App'x 507 (6th Cir. 2001) (unpublished) (prisoner's § 1983 cause of action against prison employees for allegedly denying him access to courts while prisoner was in administrative segregation accrued when prisoner exhausted all of his administrative remedies). To the extent the requirement of exhausting his administrative remedies interfered with Rager's ability to file a timely civil rights complaint, Rager's remedy is to argue that the statute of limitations should be equitably tolled, which is an argument he has expressly raised and will be discussed *infra*. *See, e.g.,* Adams, 398 F. App'x at 374 (to the extent the requirement of exhausting his administrative remedies interfered with prisoner's ability to file a timely complaint in district court, his remedy was to seek equitable tolling of the statute of limitations) (citing Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007)).

Because Rager knew or had reason to know of the facts which would support a cause of action for each of the alleged constitutional violation on July 13, 2010, July 17, 2010, July 25, 2010, and November 17, 2010, he had four years from each of those dates to file a respective federal civil rights action.  Rager did not commence this lawsuit until February 24, 2015.[6]  Therefore, the constitutional claims identified *supra* are time-barred unless Rager demonstrates that equitable tolling principles render them timely.

Rager contends he is entitled to equitable tolling of the four-year limitations period "while he pursued AR's" (administrative grievances) (*see* ECF No. 88 at 2–4; ECF No. 92 at 2–6; ECF No. 94 at 3–8).  Citing Gonzalez v. Hasty, 651 F.3d 318 (2d Cir. 2011) and published decisions of four other federal circuit courts (as well as unpublished decisions of three more circuits), Rager argues that the limitations clock must be stopped while he was exhausting his administrative remedies.  Rager further argues that the limitations clock should be stopped during the time Defendants (1) rejected, returned, or denied his grievances for "fraudulent, fictitious, or factually

---

[6] Rager did not file his complaint by placing it in the prison mail system; rather, it was mailed by a third party, Daniel Rager, via the United States Postal Service (*see* ECF No. 1 at 22). Rager has filed a number of his pleadings and other documents through this third party (*see* ECF No. 23 at 31; ECF No. 28 at 3; ECF No. 63 at 9; ECF No. 78 at 5; ECF No. 88 at 19).  Therefore, Rager is not entitled to the benefit of the "mailbox rule" in determining the date his complaint was filed. Accordingly, the complaint is deemed filed on the day it was received by the clerk of court, February 24, 2015.

incorrect reasons"; (2) failed to respond to administrative appeals within the time limits set forth in BOP policy; and (3) failed to respond at all to four of his administrative appeals.

The Supreme Court has held that the tolling of a statute of limitations in a § 1983 or Bivens suit is governed (as a matter of federal common law) by the law of the forum state.  See Wallace, 549 U.S. at 394 (2007); Hardin v. Straub, 490 U.S. 536, 538–39, 109 S. Ct. 1998, 104 L. Ed. 2d 582 (1989); Bd. of Regents of Univ. of State of N.Y. v. Tomanio, 446 U.S. 478, 484, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980) ("In § 1983 actions, . . . a state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible.  In most cases, they are binding rules of law.").  In a § 1983 action, federal courts may disregard an otherwise applicable state rule of law only if the state law is "inconsistent with the Constitution and laws of the United States."  Tomanio, 446 U.S. at 484–85.

Under the state law governing the statute of limitations in the instant case, Florida Statutes § 95.051, certain circumstances toll a statute of limitations.[7]  See Fla.

---

[7] The statute provides that the running of the statute of limitations is tolled by:

(a) Absence from the state of the person to be sued.

(b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.

Stat. § 95.051(1).  Exhausting administrative remedies is not on the list, *see id.*, and

by the statute's explicit terms, the list is exhaustive:  "No disability or other reason

shall toll the running of any statute of limitations except those specified in this section,

. . . ."  Fla. Stat. § 95.051(2); *see also* <u>Webb v. Chambly</u>, 584 So. 2d 216, 217 (Fla. 4th

DCA 1991) (stating that § 95.051 "limits tolling of statutes of limitations to the

circumstances set out within").

---

(c) Concealment in the state of the person to be sued so that process cannot be served on him or her.

(d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue.  In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

(e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.

(f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.

(g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.

(h) The period of an intervening bankruptcy tolls the expiration period of a tax certificate under s. 197.482 and any proceeding or process under chapter 197.

(i) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; . . . .

Fla. Stat. § 95.051(1).

However, in addition to statutory tolling, the Florida courts have applied equitable tolling to statutes of limitations.  *See* Machules v. Dep't of Admin., 523 So. 2d 1132, 1134 (Fla. 1988); Dep't of Corr. v. Chestnut, 894 So. 2d 276 (Fla. 1st DCA 2005); Williams v. Albertson's Inc., 879 So. 2d 657, 659 (Fla. 5th DCA 2004).  For example, in Machules, the Florida Supreme Court followed the lead of federal courts in applying the tolling doctrine when the plaintiff was misled or lulled into inaction by official misconduct, had in some extraordinary way been prevented from asserting his rights, or had timely asserted his rights mistakenly in the wrong forum.  *See id.* (citations omitted).  The undersigned has not found any Florida civil rights case which held that equitable tolling applies during the time that a plaintiff is actively pursuing mandatory exhaustion of administrative remedies.

Regardless of the Supreme Court's holding that in § 1983 and Bivens actions, the tolling of a statute of limitations is governed by the law of the forum state, some circuit courts have held that federal equitable tolling principles apply, and that those federal tolling principles require tolling of the limitations period during the time period in which a prisoner is actively exhausting his administrative remedies.  *See* Gonzalez, 651 F.3d at 322, 324; Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005) (as a matter of federal law, the forum state's statute of limitations in a § 1983 action

must be tolled while a prisoner completes the mandatory exhaustion process); Clifford v. Gibbs, 298 F.3d 328, 332 (5th Cir. 2002) (affirming district court's dismissal without prejudice of prisoner's § 1983 claim due to prisoner's failure to exhaust administrative remedies, but holding that because dismissal would constitute a dismissal with prejudice, due to running on Louisiana's one-year statute of limitations, limitations period should be equitably tolled during pendency of § 1983 action and any state administrative proceeding); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000) (Kentucky's one-year statute of limitations was tolled for the period during which prisoner's available state remedies were being exhausted).[8] These courts based their holdings on the theory that a prisoner is prevented from filing a § 1983 or Bivens action during the period that he is actively exhausting his administrative remedies. See Gonzalez, 651 F.3d at 322.

---

[8] The Third, Fifth, and Seventh Circuits have held that the statute of limitations for a prisoner's § 1983 action was tolled while the prisoner exhausted his administrative remedies, but those decisions were based upon state tolling laws.  See Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 602–04 (3d Cir. 2015) (holding that Pennsylvania's tolling statute required tolling during prisoner's exhaustion of administrative remedies, and declining to address plaintiff's federal equitable tolling argument); Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001) ("We thus hold that in the ordinary case, a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process."); Harris v. Hegmann, 198 F.3d 153, (5th Cir. 1999) (holding that Louisiana's tolling statute required tolling during prisoner's exhaustion of administrative remedies).

The Eleventh Circuit has declined to address whether federal equitable tolling principles <u>require</u> tolling in a § 1983 or <u>Bivens</u> action during the time that a prisoner completes mandatory exhaustion of administrative remedies. *See* <u>Napier v. Preslicka</u>, 314 F.3d 528, 534 n.3 (11th Cir. 2002) ("We proffer, but do not hold," that the doctrine of equitable tolling may apply to the administrative exhaustion requirement for prison condition suits under § 1997e(a)) (citing <u>Clifford</u>, 298 F.3d at 332–33); <u>Leal</u>, 254 F.3d at 1280 ("[W]e decline to decide in the first instance the legal issue of whether the mandatory exhaustion requirement of 42 U.S.C. § 1997e(a) and the actual exhaustion of remedies by a prisoner will operate to toll the statute of limitations.).

Under <u>federal</u> tolling principles, a court may pause the running of a limitations statute when a party "has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." <u>Lozano v. Montoya Alvarez</u>, — U.S. —, 134 S. Ct. 1224, 1231–32, 188 L. Ed. 2d 200 (2014) (citing <u>Pace v. DeGuglielmo</u>, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)); *see also* <u>Holland v. Florida</u>, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (citation omitted). As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly." <u>Cadet v. Fla. Dep't of Corr.</u>, 742 F.3d 473, 477 (11th Cir. 2014) (internal quotation marks omitted); <u>Bost</u>

v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir. 2004) (internal quotation marks omitted); *see also* Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990) (explaining that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect."). Equitable tolling is assessed on a case-by-case basis, considering the specific circumstances of the subject case. *See* Hutchinson v. Florida, 677 F.3d 1097, 1098 (11th Cir. 2012); *see* Holland, 560 U.S. at 649–50 (clarifying "the exercise of a court's equity powers must be made on a case-by-case basis") (internal quotation marks and ellipsis omitted). The plaintiff has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory. Hutchinson, 677 F.3d at 1099.

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." Holland, 560 U.S. at 653 (internal citation and quotation marks omitted); *see* Smith v. Comm'r, Ala. Dep't of Corr., 703 F.3d 1266, 1271 (11th Cir. 2012) (per curiam) (acknowledging that prisoners are not required "to exhaust every imaginable option, but rather to make reasonable efforts") (internal quotation marks omitted). Determining whether a factual circumstance is extraordinary to satisfy equitable tolling depends not on how unusual the circumstance

alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with the limitations period. *See* Cole, 768 F.3d at 1158 (quotation marks and citation omitted).  Further, under the "extraordinary circumstance" prong, the Eleventh Circuit requires a litigant to show a causal connection between the alleged extraordinary circumstances and the late filing of the federal lawsuit.  *See* San Martin v. McNeil, 633 F.3d 1257, 1267 (11th Cir. 2011) (citations omitted).

Rager contends the statute of limitations must be tolled while he was pursuing his administrative remedies (*see* ECF No. 88 at 2–4; ECF No. 92 at 2–6; ECF No. 94 at 3–8).  He states that between July 13, 2010 and February 28, 2011, he filed multiple grievances regarding Buford's use of force, the denial of medical care in the SHU, the conditions of his confinement in the SHU, the impediments to exhausting the administrative grievance process, his "designation status," retaliation, and "other" claims (ECF No. 92 at 2).  Rager asserts that "proper exhaustion lasted until 06/06/11" (ECF No. 88 at 4).  He then argues that "the exhaustion process continues even until this day [August 19, 2016]," because four of his grievances have still not been answered by BOP officials (*see id.*).  Rager contends that he has been diligently attempting to exhaust his administrative remedies, but BOP officials (1) repeatedly

rejected, returned, or denied his grievances for "fraudulent, fictitious, or factually incorrect reasons," including legibility, timeliness, and failure to attach the response from the institutional level; (2) failed to respond to administrative appeals within the time limits set forth in BOP policy; and (3) failed to respond at all to four of his appeals (*see* ECF No. 88 at 2–4; ECF No. 92 at 2–6; ECF No. 94 at 3–8).

In support of his equitable tolling argument Rager submitted time lines of eleven "Administrative Remedies" ("AR's") he pursued (ECF No. 88-1 at 5–35). Rager declares, under penalty of perjury, that the facts he included in each of these time lines is true and accurate (*see id.*).  Only nine of those AR's relate to the events at issue in this civil rights lawsuit, specifically, the following AR's: #629355, #629352, #629354, #604713, #604713, #624146, #629349, #624142, and a BP-8 submitted on July 20 2010, regarding Rager's back brace for which no AR number was issued (*id.* at 8–27).[9]  Rager's time lines show that he began filing AR's concerning the events at issue in this lawsuit on July 19, 2010 (on that date he filed a BP-8 in AR #604713 concerning "Improper Confiscation of Personal Property/Use of Force") (ECF No. 88-1 at 19).  Rager's time lines also show that some of his AR's

---

[9] With respect to the other two AR's, Rager states that AR #681636 related to a confiscation of property that occurred in February of 2012, and AR #706854 related to a pay grade reduction in his federal prison industries job in August of 2012.  Rager's First Amended Complaint does not include any factual allegations or claims related to either of these incidents.  Therefore, he has not shown that these two AR's are relevant to the statute of limitations tolling issue.

were rejected by prison officials for procedural reasons (for example, untimeliness, failure to include required attachments, exceeding the page limit, illegibility, and raising multiple issues in one AR (*see* 28 C.F.R. §§ 541.13–.17)) (*id.*).  Rager's time lines additionally show that BOP officials' responses to some of Rager's AR's were untimely under BOP regulations, and officials completely failed to respond to four of Rager's AR's (*id.*).

Rager has not shown that he is entitled to equitable tolling under either the state or federal tolling standard.  As Defendants point out, the Supreme Court has said that equitable tolling "is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace, 549 U.S. at 396.  To apply equitable tolling in a blanket fashion to all § 1983 and Bivens actions brought by prisoners would be to ignore what is supposed to be the rare, unusual, and fact-specific nature of the equitable tolling remedy.

Additionally, such blanket application of the equitable tolling doctrine ignores the causation element of the doctrine.  As previously discussed, to warrant equitable tolling, the Eleventh Circuit requires a litigant to show a causal connection between the alleged extraordinary circumstance and the late filing of the federal lawsuit.  *See* San Martin, 633 F.3d at 1267; *see also* Braxton v. Zavaras, 614 F.3d 1156, 1162 (10th

Cir. 2010) (equitable tolling not warranted when prisoners failed to file suit within the ample time left after exhausting their administrative remedies); *see also, e.g.*, <u>Wilson v. U.S. Penitentiary Leavenworth</u>, 450 F. App'x 397, 399 (5th Cir. 2011) (equitable tolling not warranted where prisoner had the opportunity to file suit within limitations period); <u>Adams</u>, 398 F. App'x at 374 (same).

Here, even if BOP officials rejected, returned, or denied Rager's grievances for "fraudulent, fictitious, or factually incorrect reasons," Rager could still have filed a federal civil rights complaint during the four-year statute of limitations period.  If Rager had indeed properly followed the administrative grievances procedures, he could rely upon Eleventh Circuit precedent to argue, in response to an exhaustion or procedural default defense, that he properly exhausted his claims despite BOP officials' responses to his grievances.  *See* <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1213 (11th Cir. 2015) (where inmate's grievance was filed in accordance with applicable procedural rules governing prison grievance process, he may be deemed to have properly exhausted his claim even if prison official denied or rejected grievance as improperly filed).[10]

---

[10] Of course, if Rager had <u>not</u> properly followed the administrative grievances procedures with respect to a claim, the claim would be subject to dismissal pursuant to the procedural default component of the PLRA's exhaustion requirement. *See* <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1159 (11th Cir. 2005).

Additionally, even if BOP officials failed to respond to Rager's grievances within the time limits set forth in BOP policy, or failed to respond at all, BOP policy expressly instructed Rager that he could consider the absence of a response to be a denial at that level, *see* 28 C.F.R. § 542.18, which then authorized Rager to proceed to the next level of the administrative grievance process.[11]  If the absence of a response occurred at the highest level of the grievance process, Rager was authorized to proceed with filing his <u>Bivens</u> action, since the lack of response is deemed a denial under the BOP's grievance procedures.  To accept Rager's argument that he is still in the process of exhaustion (by virtue of the fact that he has not received responses to some of his AR's) and thus entitled to tolling of the statute of limitations for the entirety of the past six years, would ignore the fact that the BOP's regulations expressly authorize an inmate to proceed to the next level of the process when the deadline for a response has passed.[12]

---

[11] Rager's self-created time lines for each of his administrative grievances, which he declared were true and correct under penalty of perjury, show that he was aware he could proceed to the next level of the administrative grievance process if he did not receive a response (*see* ECF No. 88-1 at 8 (entry dated 03/20/12), 13 (entry dated 03/20/12), 17 (entry dated 11/29/10), 21 (entry dated 01/14/11), 23 (entries dated 03/20/12 and 05/21/12), and 26 (entry dated 01/14/11)).

[12] Indeed, if Rager genuinely believes that he is still in the process of exhausting, it is unclear why he decided to file this federal lawsuit in February of 2015.

Moreover, according to Rager's time lines, even if he received late responses, no responses, and unjustified rejections or denials, he could have filed his federal civil rights complaint on or before November 17, 2014 (four years after his release from the SHU), if he had been reasonably diligent in pursuing his rights.  If Rager had acted with reasonable diligence, he would have been converting his grievances to a federal civil rights action during the months he was completing the administrative grievance process, to have the civil rights complaint ready to file prior to November 17, 2014. According to Rager's time lines, Rager submitted his last AR regarding his claims on January 20, 2013, the date he deposited in the prison legal mail system the Central Office Appeal for AR #629349 (*see* ECF No. 88-1 at 23–25, 33).  Rager states he never received a response to that AR.  Assuming, to Rager's benefit, that it took sixty (60) days for the Central Office to receive the appeal, and allowing the Central Office forty (40) days to respond to the appeal, pursuant to 28 C.F.R. § 542.18 (the Central Office had 20 days to respond, which could be extended another 20 days), Rager could have filed his federal civil rights complaint as early as April 30, 2013, upon expiration of the 40-day response deadline.  Rager has not shown that he was actively exhausting administrative remedies after that date.  He declined to file his federal civil rights complaint until nearly two years later, on February 24, 2015.

In sum, Rager failed to show that, despite diligent efforts, he was prevented from filing his federal civil rights complaint prior to expiration of the statute of limitations on the following claims. Therefore, he has not demonstrated he is entitled to equitable tolling of the statute of limitations as to these claims:

> (1) Rager's Fourth, Fifth, and Fourteenth Amendment claims against Lieutenant Buford concerning Buford's use of force on July 13, 2010, and Buford's failure to follow the BOP's use of force policies (asserted in paragraphs 5–10 and 27 of the First Amended Complaint), which accrued on July 13, 2010;

> (2) Rager's related First, Eighth, and Fourteenth Amendment claims against Lieutenant Buford for allegedly using force on July 13, 2010 in retaliation for Rager's reporting improper and illegal conduct by staff members at FCI-Marianna (asserted in paragraphs 12 and 31 of the First Amended Complaint), which accrued on July 13, 2010;

> (3) Rager's Fourth, Fifth, and Fourteenth Amendment claims against Lieutenant Buford and Officer O'Bryan concerning their denial of medical treatment for injuries Rager allegedly suffered as a result of Buford's use of force (asserted in paragraphs 9, 10, and 28 of the First Amended Complaint), which accrued no later than July 17, 2010, when Rager began receiving medical treatment;

> (4) Rager's Fourth, Fifth, Eighth, and Fourteenth Amendment claims against Lieutenant Buford for writing a false disciplinary report against Rager on July 17, 2010 (asserted in paragraphs 11 and 29 of the First Amended Complaint), which accrued on July 25, 2010, the date Rager received notice of the disciplinary report; and

> (5) Rager's First, Fourth, Fifth, Eighth, and Fourteenth Amendment claims against Defendants Copeland, Buford, Snell, Malone, Lewis, and Augustine for maintaining Rager in the SHU, changing his detention

status from protective custody to "under investigation" to administrative detention, and threatening to transfer him to another institution unless he dropped his administrative complaints and grievances (asserted in paragraphs 10–19, 24, 25, 30, 32, and 35 of the First Amended Complaint), which accrued on November 17, 2010, the day Rager was released from the SHU to the general population.

Accordingly, Defendants' motions to dismiss these claims on statute of limitations grounds should be granted.

B.    <u>Failure to State a Plausible Claim for Relief as to Remaining Claims</u>

The only claims that do not appear barred by the statute of limitations are the following:

(1) Rager's First, Fourth, Fifth, Eighth, and Fourteenth Amendment claims that on March 22, 2011, Lieutenant Malone threatened to place Rager back in the SHU unless he dropped his administrative complaints and grievances (asserted in paragraphs 18 and 32 of the First Amended Complaint);

(2) Rager's First, Fourth, Fifth, Eighth, and Fourteenth Amendment claims that Regional AR Coordinator Simmons repeatedly rejected, returned, or denied Rager's administrative appeals for "fraudulent, fictitious, or factually incorrect reasons," including legibility, timeliness, and failure to attach the response from the institutional level, and failed to respond to administrative appeals within the time limits set forth in BOP policy (asserted in paragraphs 20 and 33 of the First Amended Complaint);

(3) Rager's First, Fourth, Fifth, Eighth, and Fourteenth Amendment claims that National AR Coordinator Watts rejected, returned, or denied Rager's administrative appeals for "fraudulent, fictitious, or factually incorrect reasons," and failed to respond to administrative appeals within

the time limits set forth in BOP policy (asserted in paragraphs 21 and 34 of the First Amended Complaint).

Motions to dismiss for failure to state a claim upon which relief may be granted are governed by Rule 12(b)(6).  In applying that rule, the allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff.  *See* Davis v. Monroe Cnty. Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation and citation omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679 (citation omitted).  The

pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

### 1. First Amendment Claims

Rager appears to contend that Lieutenant Malone, Regional AR Coordinator Simmons, National AR Coordinator Watts, and even Warden Augustine denied his First Amendment right to access to the courts by threatening to return him to the SHU unless he dropped his grievances, and by deliberately thwarting his efforts to complete the grievance process by rejecting and denying grievances, responding in an untimely manner, and sometimes failing to respond at all.

It is settled law that interference with an inmate's access to the courts is a violation of a First Amendment right actionable under section 1983.  *See* Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991).  However, as established in Lewis, to successfully allege a constitutional violation based upon a denial of access to courts, Rager must specifically show how he was actually harmed or prejudiced with respect to the litigation in which he was involved.  518 U.S. at 349.  The type of prejudice that is deficient in the constitutional sense is that which hinders the inmate's ability to actually proceed with his claim; there is no constitutional mandate "to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court."  *Id.* at 354.  Importantly, "the injury requirement is not satisfied by just any type of frustrated legal claim."  *Id.*  Rager must show that he was prejudiced in a criminal appeal or post-conviction matter, or in a civil rights action seeking "to vindicate 'basic constitutional rights.'"  *Id.* at 354–55 (quoting Wolff v. McDonnell, 418 U.S. 539, 579, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)).  Furthermore, he must allege actual injury "such as a denial or dismissal" and show that presentation of his case was impeded because of Defendants' actions.  Wilson v. Blankenship, 163 F.3d

1284, 1290–91 (11th Cir. 1998) (citing <u>Lewis</u>); *see also* <u>Bass v. Singletary</u>, 143 F.3d 1442, 1445–46 (11th Cir. 1998).  Moreover, Rager cannot show an injury unless he shows that the case he was unable to pursue had arguable merit.  <u>Lewis</u>, 581 U.S. at 353 n.3; <u>Wilson</u>, *supra*.

Rager's access-to-courts claims are based upon the argument that the presentation of the instant federal civil rights action was impeded because of Lieutenant Malone's threat of retaliation, and the Regional and National AR Coordinators' denying, rejecting, and failing to timely respond to Rager's AR's.  As discussed *supra*, although some of Rager's civil rights claims asserted in this lawsuit are subject to dismissal as untimely, Rager's ability to timely file was not impeded by Defendants' conduct.  Rager could have filed this civil rights lawsuit prior to expiration of the statute of limitations if he had diligently pursued his rights.  Rager had ample time to prepare his civil rights complaint and have it ready to file on April 30, 2013, when Rager had either received responses to his grievances, or the administrative deadline for a response had expired and he could thus proceed to the next level, including the filing of a federal civil rights action.  Rager still had over a year on the limitations clock to file his civil rights complaint, yet he did not do so until February 24, 2015.  Rager's allegations fail to plausibly suggest that he suffered actual

injury as a result of the conduct of Lieutenant Malone, Warden Augustine, Regional AR Coordinator Simmons, or National AR Coordinator Watts; therefore, his allegations fail to state a plausible First Amendment claim against any of these Defendants.

2.   Fourth, Fifth, Eighth, and Fourteenth Amendment Claims

To the extent Rager asserts that Lieutenant Malone's threat, on March 22, 2011, to retaliate against him for filing grievances by returning him to the SHU, violated his due process rights and constituted cruel and unusual punishment (*see* ECF No. 15 at 13–14, ¶ 30), his factual allegations do not state a plausible constitutional claim. Generally, allegations of verbal abuse or unfulfilled threats, without more, do not state a constitutional violation cognizable under Section 1983.  *See* Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (verbal abuse normally states no constitutional violation); Chandler v. Dist. of Columbia Dep't of Corr., 145 F.3d 1355, 1360 (D.C. Cir. 1998); Barney v. Pulsipher, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998) ("[A]cts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment."); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (mere allegations of verbal abuse do not present actionable Section 1983

claim); Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) (the Constitution does not

protect against all intrusions; fear or emotional injury resulting solely from verbal

harassment or idle threats are generally insufficient to state constitutional violation);

Ivey v. Williams, 832 F.2d 950, 955 (6th Cir. 1987); Johnson v. Glick, 481 F.2d 1028,

1033 n.7 (2d Cir. 1973); Crenshaw v. City of Defuniak Springs, 891 F. Supp. 1548,

1555 (N.D. Fla. 1995) ("verbal harassment and abusive language, while

'unprofessional and inexcusable,' are simply not sufficient to state a constitutional

claim under Section 1983"); *see also, e.g.*, Hernandez v. Fla. Dep't of Corr., 281 F.

App'x 862 (11th Cir. 2008) (unpublished but recognized for persuasive authority)

("[A]llegations of verbal abuse and threats by the prison officers did not state a claim

because the defendants never carried out these threats and verbal abuse alone is

insufficient to state a constitutional claim.").

     As the Fifth Circuit stated:

> as a rule, mere threatening language and gestures of a custodial officer
> do not, even if true, amount to constitutional violations. . . .  Were a
> prisoner . . . entitled to a jury trial each time he was threatened with
> violence by a prison guard, even though no injury resulted, the federal
> courts would be more burdened than ever with trials of prisoner suits.

McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) (quotations and citations

omitted).

Here, Rager alleges that on March 22, 2011, Lieutenant Malone threatened to place him back in the SHU unless he dropped his administrative complaints and grievances. This allegation of an unfulfilled verbal threat fails to state a plausible Fourth, Fifth, Eighth, or Fourteenth Amendment claim against Malone; therefore, Defendant Malone's motion to dismiss should be granted as to these claims.

Additionally, Rager's procedural and substantive due process claims against Regional AR Coordinator Simmons and National AR Coordinator Watts, based upon their failure to follow federal regulations and BOP policy in their administration of the administrative grievance process (*see* ECF No. 15 at 10–11, 19), are subject to dismissal for failure to state a plausible claim for relief. A prison grievance procedure does not provide an inmate with a constitutionally protected liberty interest. *See* Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011); *see also* Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (holding that federal prison administrative remedy procedures "do not in and of themselves create a liberty interest in access to that procedure," and that "the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance"). Therefore, Rager's allegations fail to state a plausible due process claim.

3.      The BOP

The BOP contends that Rager may not maintain a <u>Bivens</u> action against a federal agency (*see* ECF No. 49 at 2).  The BOP further contends that to the extent Rager asserts a claim under the Federal Tort Claims Act ("FTCA"), only the United States is a proper Defendant (*id.*).  Further, Rager did not first file an administrative tort claim, which is a prerequisite to filing a lawsuit under the FTCA (*id.*).

Rager responds that he is not bringing a claim under the FTCA (*see* ECF No. 63 at 2).  He further states the BOP is a proper Defendant because he is seeking declaratory and injunctive relief to compel the agency and its officials to comply with its regulations and policy statements regarding the administration of the grievance process (*see* ECF No. 63 at 2–7).

The BOP is correct that a <u>Bivens</u> claim against a federal agency, or against a federal officer in his or her official capacity, is barred by sovereign immunity.  *See* <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 483–86, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994).  Although Rager may bring a claim for declaratory and injunctive relief against the BOP under 28 U.S.C. § 1331, Rager is not entitled to either of these remedies, because, as discussed *supra*, his claims against the individual Defendants are subject to dismissal as time-barred or for failure to state a claim upon which relief may be

granted.  *See* <u>Rooney v. Watson</u>, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").  For these reasons, the BOP's motion to dismiss should be granted.

## III.    CONCLUSION

Defendants are entitled to dismissal of all of Rager's claims based upon a statute of limitations defense, or for failure to state a claim upon which relief may be granted.   Therefore, this action should be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly, it is respectfully **RECOMMENDED**:

1.    That Defendants' motions to dismiss (ECF Nos. 49, 64, 67, 72) be **GRANTED**.

2.    That all of Plaintiff's claims against all Defendants be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3.    That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this <u>29th</u> day of November 2016.


_/s/ Elizabeth M. Timothy_____
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. _See_ 11th Cir. Rule 3-1; 28 U.S.C. § 636.**